## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SANDRA CORTEZ, <br>         Plaintiff, <br>     v. <br> TRANS UNION, LLC, <br>         Defendant. | C.A. No: 05-5684 |

## TRANS UNION LLC'S TRIAL BRIEF

### I.      INTRODUCTION

Plaintiff commenced this action under the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (the "FCRA") based on Trans Union's allegedly improper reporting and reinvestigation of information to the effect that Plaintiff was a person listed on the United States Treasury Department Office of Foreign Assets Control ("OFAC") list of Specially Designated Nationals and Blocked Persons List (the "OFAC List"). This list is maintained pursuant to Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act ("USA Patriot Act"). The purpose of this brief is to provide background on the Treasury OFAC List, and to demonstrate that the list has nothing to do with the FCRA.[1]

The OFAC Name Screen is an OFAC compliance product designed to facilitate a USA Patriot Act compliance process for lenders – the FCRA is not implicated. Trans Union's sale of the product is not and cannot be a willful violation of the FCRA, or done with an intent to harm Plaintiff. The OFAC Name Screen information, solely and contractually for the purpose of OFAC compliance, should be considered privileged. As such, Plaintiff should be barred at trial from presenting to the jury her anticipated testimony and attorney argument to the contrary.

---

[1]      The legal bases for the absence of a cognizable claim under the FCRA are set forth in Trans Union's First and Second Motions *In Limine*. As demonstrated in Trans Union's First Motion *In Limine*, the OFAC information is not part of or on Plaintiff's "consumer report" or any other consumer's consumer report. As demonstrated in Trans Union's Second Motion *In Limine*, Plaintiff admitted she suffered no cognizable financial harm as a result of Trans Union's sale of the OFAC Name Screen to a third party; Plaintiff suffered no cognizable harm whatsoever as a result of Trans Union's alleged conduct; and Trans Union's conduct was clearly not willful, malicious or defamatory.

A.   **Background of The Treasury OFAC List**

The OFAC Name Screen returns an unparsed message outputted from the Treasury OFAC List and delivered to the financial institution for its compliance requirements and procedures, not for consumer loan eligibility determinations.

Trans Union's OFAC Name Screen product is an USA Patriot Act OFAC compliance product offered to financial institutions.  *See* Trans Union's First Motion *In Limine,* Section II.A., and Deposition of Colleen Gill, Director of Product Development and Management at Trans Union, attached thereto.  The product compares the financial entities input information respecting its prospective customer's name ***only*** with the Treasury OFAC List as maintained by Trans Union's vendor, Accuity/Thomson Financial Publishing's ("TFP") FACFile.  *Id.*  The comparison is outside of and without regard to Trans Union's consumer reporting database or other Trans Union databases.  OFAC Name Screen information is derived from the official and routinely updated OFAC website list, not from Trans Union's consumer relations database.  *Id.*

Accordingly, the Treasury OFAC List information and OFAC Name Screen is ***not*** information "which is used or expected to be used or collected in whole or in part" for credit eligibility determinations.  *See Id.*   On the contrary, as more fully explained ***infra***, Trans Union's contract with its customers prohibits adverse actions based upon the return of such information.   The sole evidence of record is that the car dealer knew the alert was a "possible match" and "knew and understood" the alert was "not credit information." *Id.,* and Declaration of Tyler Sullivan, Elway Subaru South,¶9. Exhibit "C" to Trans Union's First Motion *In Limine*.

### 1.        The History of the Treasury OFAC List

The OFAC list is a law enforcement tool, designed in the early 1800s to combat foreign enemy governments.   Most recently, it has been employed to prevent drug cartels, drug traffickers and, since September 11, 2001, terrorists from using the domestic financial industry for international drug and terror financing.[2]   As more fully explained in the Federal Registry, Vol. 68, No. 19/01/29/03 (68 F.R. 42203):

> The primary mission of OFAC is to administer and enforce economic sanctions against targeted foreign countries, terrorists and terrorist organizations, and narcotics traffickers in furtherance of U.S. foreign policy and national security objectives.  OFAC acts under the general Presidential wartime and national emergency powers, as well as specific legislation, to prohibit transactions and freeze (or "block") assets subject to U.S. jurisdiction.  Economic sanctions are designed to deprive the target access to the U.S. financial system and the benefits of trade, transactions, and services involving U.S. markets, businesses, and individuals.

---

[2] The history of OFAC is described on the Treasury Website as follows:

> The Treasury Department has a long history of dealing with sanctions. Dating back prior to the War of 1812, Secretary of the Treasury Gallatin administered sanctions imposed against Great Britain for the harassment of American sailors. During the Civil War, Congress approved a law which prohibited transactions with the Confederacy, called for the forfeiture of goods involved in such transactions, and provided a licensing regime under rules and regulations administered by Treasury.

> OFAC is the successor to the Office of Foreign Funds Control (the ``FFC''), which was established at the advent of World War II following the German invasion of Norway in 1940. The FFC program was administered by the Secretary of the Treasury throughout the war. The FFC's initial purpose was to prevent Nazi use of the occupied countries' holdings of foreign exchange and securities and to prevent forced repatriation of funds belonging to nationals of those countries. These controls were later extended to protect assets of other invaded countries. After the United States formally entered World War II, the FFC played a leading role in economic warfare against the Axis powers by blocking enemy assets and prohibiting foreign trade and financial transactions.

> OFAC itself was formally created in December 1950, following the entry of China into the Korean War, when President Truman declared a national emergency and blocked all Chinese and North Korean assets subject to U.S. jurisdiction.

(http://www.treasury.gov/offices/enforcement/ofac/faq/answer.shtml#1 (*Last visited October 19, 2006*).

Persons who do business with individuals or entities listed on the OFAC list are subject to fines and other sanctions.  In order to comply with the OFAC rules, companies purchase OFAC advisors or alerts from third parties, including Trans Union.  The OFAC list itself identifies barred persons by the available, limited, identifiers, usually names, country of origin and often a date of birth or business interest.

### 2.    The "possible match"

The Treasury OFAC List contains a Sandra Cortes Quintero, associated with various businesses in Cali, Columbia; date of birth June 21, 19*71*.  Ms. Quintero is listed as an "SDNT" or Specially Designated Narcotics Trafficker.  Plaintiff's name is Sandra Cortez; her date of birth May 19*44*.[3]  There is no social security number or actual address for this non-resident, non-citizen.  The actual OFAC Name Screen sold to Elway Subaru South is copied below, along with the (current) on-line Treasury OFAC list from the U.S Treasury website.



---

[3]    Plaintiff's maiden name was Rutecki.  From 1967 to 1969 her last name was Dixon; 1969 to 1985 – Saphiloff; from 1985 to 1989 – Rutecki; 1989 to the present – Cortez, although she was divorced in 1992.  Plaintiff has had at least six different addresses since 1996.  None of her changes in names or addresses has caused a problem with her credit file or information.

4

The Treasury OFAC List contains the following entry on p.79:

> CORTES QUINTERO, Sandra, c/o CREDISA
> S.A., Cali, Colombia; c/o COMPANIA DE
> FOMENTO MERCANTIL S.A., Cali, Colombia;
> c/o CONSTRUCCIONES PROGRESO DEL
> PUERTO S.A., Puerto Tejada, Colombia; c/o
> UNIDAS S.A., Cali, Colombia; DOB 21 Jun
> 1971; POB Cali, Valle, Colombia; Cedula No.
> 66827003 (Colombia); Passport 66827003
> (Colombia) (individual) [SDNT]

http://www.ustreas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf        (list last updated September

29, 2006) (*last visited* October 19, 2006).

Mr. Sullivan testified he received the OFAC Name Screen and considered it to be a

"***possible*** match" to Plaintiff's name.  Sullivan Dep, p.16, attached to Trans Union's First Motion

*In Limine* as Exhibit "B."  Despite plaintiff's attorney argument that Trans Union called it a

match, the only competent evidence is to the contrary.

Indeed, Mr. Sullivan simply compared Plaintiff's name and date of birth with the

information from the Treasury OFAC List, and ruled out Plaintiff as a match.  Plaintiff left the

dealership with her car and an auto loan that was not impacted in any way; Plaintiff does not

contend otherwise.

The person listed by the Treasury OFAC List is thirty one (31) years plaintiff's junior –

no reasonable person (or juror) can find otherwise.   The only third party who reviewed the alert

has already testified he ruled out a "possible match" in accordance with the OFAC procedures.

Plaintiff is left only with irrelevant, unfounded and inadmissible hearsay and attorney argument.

5

### 3.       How the Treasury OFAC List is used.

Trans Union's OFAC Name Screen contract with its customers/subscribers provides that if a name is "obtained," the subscriber, here Elway Subaru, is "solely responsible for taking any action that may be required by federal law as a result of a match." (*See* Contract, Exhibit "D", to Trans Union's First Motion *In Limine*) "Federal law," as explained on the Treasury Department Website, directs the financial entity to take the following steps ought to be taken before calling the OFAC "hotline":

> *When should I call OFAC's compliance "hotline"?*
> Only after you've taken the following "due diligence" steps.
> ...
> *2. Now that you've established that the hit is against OFAC's SDN list or targeted countries, you must evaluate the quality of the hit. Compare the name in your transactions with the name on the SDN list. Is the name in your transaction an individual while the name on the SDN list is a vessel, organization or company (or vice-versa)?*
>
> • If yes, you do not have a valid match.*
> • If no, please continue to 3 below.
>
> *3. How much of the SDN's name is matching against the name in your transaction? **Is just one of two or more names matching (i.e., just the last name)?***
>
> • **If yes, you do <u>not</u> have a valid match.***
> • If no, please continue to 4 below.
>
> *4. Compare the complete SDN entry with all of the information you have on the matching name in your transaction. An SDN entry often will have, for example, a full name, address, nationality, passport, tax ID or cedula number, place of birth, date of birth, former names and aliases. Are you missing a lot of this information for the name in your transaction?*
>
> • If yes, go back and get more information and then compare your complete information against the SDN entry.
> • If no, please continue to 5 below.
>
> *5. Are there a number of similarities or exact matches?*
>
> • If yes, please call the hotline at 1-800-540-6322.
> • If no, you do not have a valid match.*

> \*        *If you have reason to know or believe that allowing this person to do business in the United States would violate any of the Regulations, you should call the hotline and explain this knowledge or belief.*

www.treasury.gov/offices/enforcement/ofac/faq/answer.shtml#hotline (*last visited* October 19, 2006) (underline, italics in original, bold supplied).

Instantly, Mr. Sullivan checked the list and the differing dates of birth.  The possible match was ruled out, just as required by the government.  The FBI was not called and she left with her car.  Plaintiff's claim, unsupported by competent evidence, simply ignores the reality of the transaction and the provisions of the USA Patriot Act with which Elway South was required to abide.  As set forth in Trans Union's Motions *In Limine*, this event does not trigger any of Trans Union's FCRA duties.  Even if it did, Plaintiff cannot establish Trans Union harmed her in any way, that Trans Union willfully violated the FCRA, or maliciously defamed her.

Respectfully submitted,

KOGAN, TRICHON & WERTHEIMER, P.C.


*/s/ Bruce S. Luckman*
BRUCE S. LUCKMAN (BL-3461)
TIMOTHY P. CREECH (TC-7732)
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
email: bluckman@mstkw.com;

*Counsel for Defendant,*
*Trans Union LLC*

DATED:        October 19, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| SANDRA CORTEZ, )<br><br>                                          Plaintiff, )<br><br>                 v. )<br><br>TRANS UNION, LLC, )<br><br>                                      Defendant. ) | C.A. No: 2:05-cv-05684-JF |

## CERTIFICATE OF SERVICE

Bruce S. Luckman, Esq., hereby certifies he caused a true and correct copy of the foregoing Trial Brief to be sent on this date *via* ECF Notification to the following ECF Registered User:

JAMES A. FRANCIS     jfrancis@consumerlawfirm.com

*Counsel for Plaintiff*

/s/ Bruce S. Luckman
BRUCE S. LUCKMAN

DATED:          October 19, 2006