IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA CORTEZ ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 05-5684 |
| vs. ) | |
| ) | |
| TRANS UNION, LLC ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF SANDRA CORTEZ'S TRIAL BRIEF

Plaintiff Sandra Cortez respectfully submits this Trial Brief primarily in order to advise this Court that the earliest actionable period in this matter began to run on October 27, 2003, and continues through the present.[1] Plaintiff should thus be permitted to present evidence and recover damages from October 27, 2003 through April 23, 2007 (the current trial date).[2] Plaintiff should also be permitted to recover future damages, stemming from Trans Union's conduct between October 27, 2003 and the present, as the jury deems appropriate.

Plaintiff's theories of liability are set forth in her Complaint. (*See* Complaint at pars. 24-48). In summary, Plaintiff claims that Trans Union violated, on an ongoing basis, FCRA sections 1681e, 1681g, and 1681i. Plaintiff also brings common law claims for negligence, defamation and invasion of privacy/false light. (*See* Complaint at pars. 24-48). Plaintiff's Proposed Points for Charge (to be filed under separate cover next) will set forth the applicable legal standards for each of these FCRA and common law claims.

---

[1] The Court raised the issue as to the proper period of liability at the conclusion of the *Daubert* hearing in this matter.

[2] As discuss below, this period is for Plaintiff's FCRA section 1681c(b) claim as well as her common law claims with a two year statute of limitations, such as her negligence claim. Also as explained below, some of Plaintiff's claims have a shorted actionable period.

Finally, Plaintiff also submits this Trial Brief in order to rebut Trans Union's misleading Trail Brief argument that inaccurate credit reporting concerning the OFAC list does not implicate the FCRA. Indeed, if it were true that the FCRA does not and cannot cover the reporting of OFAC list information, Trans Union would have filed a 12(b)(6) motion to dismiss two years ago. The plain text of the FCRA and supporting authorities from federal courts and the Federal Trade Commission (which Trans Union conveniently omits from its Trial Brief) make it clear that Trans Union's conduct in this case is covered by the FCRA in several respects.

## I.   THE ACTIONABLE PERIOD BEGAN ON OCTOBER 27, 2003 AND PLAINTIFF MAY RECOVER DAMAGES FROM THAT DAY FORWARD

Plaintiff first seeks to address a concern raised by this Court at the conclusion of the November 2, 2006 *Daubert* hearing in this matter, which led in the qualification of Evan Hendricks as Plaintiff's expert in the area of credit reporting. At the conclusion of that hearing and probably in partial consideration of several motions in limine which had just been filed by Trans Union, the Court indicated that its "inclination so far" was to find that the period for which Plaintiff could recover damages began to run *after* Plaintiff put Trans Union on *notice* of the her credit reporting dispute, which was March 31, 2005. The Court further stated that there would probably be liability after Plaintiff brought the error to Trans Union's attention. Plaintiff's counsel argued at the time that no advance notice was necessary for certain of Ms. Cortez's FCRA and state law claims, and that there was liability both before and after Plaintiff put Trans Union on notice. The Court orally advised that it would hear the parties' position on this issue prior to trial, and would allow Plaintiff the opportunity to change its inclination on the issue of notice. (*See Daubert* Hearing transcript at 48-51, which is attached hereto as Exhibit A).

With trial now schedule for April 23, 2007, Plaintiff respectfully submits this brief in support of her position that liability attached, and damages are recoverable, from as early as

October 27, 2003 -- i.e., 2 years prior to the filing of Plaintiff's Complaint -- without any notice of a dispute from Plaintiff to Trans Union. *See* 15 U.S.C. § 1681p (statute of limitations).

### A. FCRA Section 1681e(b) Claims Have No Prior Notice Requirement, And Plaintiff May Recover For Trans Union's Violation Of That Section From October 23, 2003 To The Present, And Into The Future

The record is clear in this case that Plaintiff first disputed her credit file with Trans Union on March 31, 2005, after her humiliating ordeal at Elway Subaru where she was misidentified as a criminal on the OFAC list by Trans Union and was advised that the FBI would need to be called. Plaintiff would agree that her claims that require notice or a credit dispute -- namely, Plaintiff's FCRA section 1681g and 1681i claims -- are actionable only after March 31, 2005.

Importantly, however, Plaintiff has also brought a claim under FCRA section 1681e(b). (*See* Complaint at par. 28(h)). The face of that statutory section, as well as Third Circuit and Eastern District of Pennsylvania District Court case law, makes clear that no prior notice is required for a section 1681e(b) claims -- alleging that Trans Union failed to maintain Plaintiff's file with procedures that assured "maximum possible accuracy." *See* 15 U.S.C. § 1681e(b); *Philbin v. Trans Union Corporation*, 101 F. 3d 957, 963-66 (3d. Cir. 1996).

Specifically, section 1681e(b) of the FCRA provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b) (emphasis added). In order to establish a violation of FCRA section 1681e(b), the Third Circuit has held that a plaintiff must show that:

> (1) inaccurate information was included in the plaintiff's credit report;
> (2) the inaccuracy was due to the agency's failure to follow reasonable procedures;
> (3) the plaintiff suffered injury; and
> (4) the plaintiff's injury was caused by the inclusion of the inaccurate entry.

*See Philbin v. Trans Union Corp.*, 101 F.3d 957, 963-66 (3d. Cir. 1996). Unlike the standards for other FCRA claims, a violation of FCRA section 1681e(b) is not in any way predicated on notice by the consumer or notice of any kind.

The only trial courts within this District to have specifically considered this argument held that no prior notification requirement exists for FCRA section 1681e(b) claims. *O'Conner v. Trans Union Corp.*, Civ. No. 97-4633, 1999 WL 773504 at *4-5 (E.D. Pa. Sept. 29, 1999) (Hutton, J.) (denying summary judgment on FCRA section 1681e(b) claim where consumer reporting agency had mixed up personal identifying information of plaintiff-consumer with that of his son). In *O'Connor*, this same consumer reporting agency, Trans Union, made the exact same argument with respect to a section 1681e(b) claim. *Id.* Judge Hutton expressly stated that he "disagrees with Defendant's analysis and argument" and held that no "prior notification" requirement exists. *Id.* The rationale of the *O'Conner* decision was again affirmed more recently in this District by Judge Brody in *O'Brein v. Equifax*, 382 F. Supp.2d 733, 738 (E.D. Pa. 2005) (FCRA 1681e(b) claim actionable, survives summary judgment, and must be presented to jury even where consumers never disputed to consumer reporting agency or put it on notice of a bankruptcy error).

In this case, significant evidence in the form of expert testimony as well as the testimony of Trans Union's Colleen Gill, makes clear that Trans Union had *no procedures at all* in place to assure the "maximum possible accuracy" of the credit report that it was selling about Plaintiff, or any other consumer, as far as the "OFAC Alert" credit data was concerned. This was the case both before and after Plaintiff first disputed to Trans Union on March 31, 2005. Importantly, Plaintiff suffered damages as a result of Trans Union's conduct in failing to maintain her file with procedures that assures maximum possible accuracy prior to March 31, 2005. Plaintiff

4

would be unfairly prejudiced if she is not permitted to introduce evidence and recover damages prior to March 31, 2005 (such as the Elway Subaru fiasco) simply because she had not disputed with Trans Union through that day.

## B. Plaintiff's Common Law Claims For Defamation, Negligence And Invasion Of Privacy/False Light Have No Prior Notice Requirement

Tort duties exist even without prior notice. There is no requirement to Plaintiff's knowledge that consumers or other individuals put any defendant on notice not to defame them or to use reasonable care in their conduct toward them before suing in tort. Nor has Trans Union provided any authority to that effect to this Court. Thus, Plaintiff need not have put Trans Union of notice of its false and derogatory reporting (which labeled Plaintiff as a criminal on the OFAC list) in order to recover under any of her tort theories for damages that she suffered at Elway Subaru on March 30, 2005.

Trans Union's only argument as to the common law claims is that those claims are "preempted" by FCRA section 1681h(c) because Trans Union's conduct was not "willful."[3] This argument fails for two basic reasons.

First, the limitations to common law liability set forth at FCRA section 1681h(e), on which Trans Union relies, impose a "willfulness" threshold only for actions stemming from disclosures to the consumer, but not all actions. As one court recently explained:

> Section 1681h(e) suggests not that Congress has limited actions brought in all areas regulated by the FCRA but that defendants will have qualified immunity from actions based on information disclosed pursuant to certain provisions of the FCRA. *Webb v. Bob Smith Chevrolet, Inc.*, 2005 WL 2065237 at *5 (W.D.Ky. Aug. 24, 2005). In *McAnly v. Middleton & Reutlinger, P.S.C.*, 77 F.Supp.2d 810, 814-15 (W.D.Ky.1999), the district court explained that,

---

[3] Importantly, and unlike other federal statutes that preempt the field, the FCRA has no such broad preemption language. The FCRA simply imposes a higher scienter standard for certain state common law claims, such as negligence, defamation and invasion of privacy, under some circumstances. *See* 15 U.S.C. § 1681h(e).

> 'section 1681h(e) is not actually a preemption provision. Rather, it is a quid pro quo grant of protection for statutorily required disclosures. Since various parts of the federal statute require consumer reporting agencies and information users to disclose information to consumers under certain circumstances, this section guarantees that the agencies or users cannot be sued for those required disclosures [under FCRA sections 1681g, 1681h and 1681m] under state tort law. It makes sense that acts required to be done by the FCRA are immunized from state tort liability.'

*Poore v. Sterling Testing Sys., Inc.*, 410 F.Supp. 2d 557, 573 (E.D. Ky. 2006).

Here, Plaintiff's common law claims are based on information provided by Tran Union to third parties, such as Elway Subaru, a potential landlord, as well as other existing and potential creditors. They are not based upon the disclosures to consumers required under sections 1681g, 1681h and section 1681m. Nor are they based upon information disclosed by a user of a consumer report. Accordingly, Plaintiff's state law claims are not prohibited under section 1681h(e).

Second, and as more fully addressed in Plaintiff's opposition to Trans Union Second Motion *In Limine* (*see* P's Opp. to 2d Motion *In Limine* at pp.7-9), courts in this Circuit have routinely held that it is for a jury to determine whether a consumer reporting agency's conduct is willful. If a plaintiff can proffer evidence creating a genuine issue of fact as to whether the defendant's conduct was willful under the FCRA, the common law claims are appropriate and not barred. At least five decisions within the Eastern District of Pennsylvania, including decisions against Trans Union, have held that a plaintiff in an FCRA case may proceed to trial with his/her common law claims for negligence, defamation and invasion of privacy/false light, so long as those claims are premised upon willful conduct pursuant to FCRA section 1681h(e). *See Abusaab v. Equifax Information Services*, LLC, C.A. No. 05-5094, 2006 WL 1214782 (Bartle, C.J.); *Lawrence v. Trans Union, LLC*, 296 F.Supp. 2d. 582, 590-591, 2003 WL 22992081 at * 5-

6 (E.D. Pa. Dec. 11, 2003) (Brody, J.); *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 321-22 (E.D. Pa. 2003) (Dalzell, J.); *Sheffer v. Experian Info. Solutions, Inc.*, 249 F. Supp.2d 560, 563 (E.D. Pa. 2003) (Schiller, J.); *Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 at *3 (E.D. Pa. July 24, 2003) (same) (Schiller, J.). Trans Union cites no authority within this Circuit to the contrary.

At trial in this case, Plaintiff will prove that Trans Union acted in knowing and reckless disregard for her rights and the rights of other consumers. Plaintiff will prove that Trans Union has continually reported OFAC Alerts on her credit file, notwithstanding its knowledge that she is not on the OFAC list and is not a criminal. Plaintiff will further prove that Trans Union has not undertaken any steps or implemented any procedures to prevent this grossly erroneous practice from occurring in the future. Plaintiff will prove that Trans Union consciously disregards consumer rights by failing to institute any procedures to prevent innocent consumers from having OFAC Alerts appear on their credit reports. Such evidence easily satisfies the reckless disregard standard for proving willfulness in an FCRA case. (*See, e.g.*, Gill Dep. at pp. 41-53.) As in the cases cited above, Plaintiff will prove that Trans Union acted willfully through the testimony of its own representatives and the contents of its own records.

Thus, because there is no "preemption" of Plaintiff's state common law claims, and because there is no "prior notice" requirement for any of those claims, Plaintiff may present evidence and recover damages for the initial reporting with respect to both her FCRA section 1681e(b) claim and her common law claims.

## II. CONTINUING LIABILITY AND DAMAGES

Plaintiff has identified exhibits and witnesses designed to establish liability under FCRA sections 1681c, 1681g and 1681i (as pled in her Complaint) and damages for the period leading up to the filing of her Complaint, and thereafter – through the present. Indeed, through Trans

7

Union's own credit reports and disclosures as well as Trans Union's own witnesses, as well as through expert testimony and Plaintiff's own testimony, Plaintiff will show that Trans Union continued to inaccurately label Plaintiff as a criminal on its credit reports through 2005 and 2006. Plaintiff, for example, expects to call as a witness Trans Union's own Colleen Gill who testified at her deposition about the continuing misreporting, and identified Trans Union documents continuing to show Plaintiff mislabeled as a criminal.

Just before this matter was originally scheduled to go to trial on October 30, 2006, Trans Union's counsel announced in open court that Trans Union "corrected" the problem. Having been misled by Trans Union before about that fact (told in writing that she was not being reported on the OFAC list, when in fact she was), a skeptical Plaintiff and her counsel both requested proof of the "correction." None was ever provided. Plaintiff also intends to present evidence at trial about those communications.

Under these circumstances, Plaintiff believes that it is appropriate to present evidence of liability and damages through the time of trial based on her Compliant as originally pled. To the extent that the Court finds that it is necessary for Plaintiff to amend her Complaint to conform with this post-Complaint evidence, Plaintiff respectfully seeks leave to file an amended complaint per Fed. R. Civ. P. 15(b), either before trial or at the conclusion of trail.

### III. TRANS UNION'S COUNSEL IS MISTAKEN IN ARGUING THAT THE FCRA CANNOT COVER REPORTING CONCERNING THE OFAC LIST

In its own Trial Brief (docket no. 14), Trans Union argues that the OFAC list cannot possibly "implicate" the FCRA. This is just a last-minute and self-serving argument to desperately avoid the significant exposure – in the form of statutory, actual, and punitive damages, as well as mandatory attorney's fees – that the FCRA places upon a defendant. *See* 15 U.S.C. §§ 1681n and 1681o. Trans Union offers no authority *whatsoever* in support of its bald contention that the

FCRA does not cover it when it sells information on its credit reports (whether accurate or inaccurate) providing that a consumer is on the OFAC list. Indeed, if this was a case of a lack of FCRA coverage, Trans Union would have moved to dismiss the Complaint two years ago.

The best authority for that inquiry of the FCRA's applicability and coverage, as is usually the case, is the face of the FCRA itself. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989) (where the statute's language is plain, the court's function is to enforce it according to its terms); *United States v. Cheryl Schneider*, 14 F.3d 876, 879 (3d Cir. 1994) ("The best evidence of Congress' intent is the text of the statute."). The plain and broad language of the FCRA makes clear that selling information that someone is a potential terrorist, money launderer or drug trafficker is covered as a "consumer report," and thus triggers all of the obligations of a "consumer reporting agency" such as Trans Union, including the obligations at issue here under FCRA sections 1681c, 1681g, and 1681i.

The FCRA defines a "consumer reporting agency" as:

> [A]ny person which, for monetary fees, ... regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

15 U.S.C. § 1681a(f). There can be no dispute that Trans Union is one of the three major consumer reporting agencies in this country. (*See* Answer to Complaint at par. 6-23) (single paragraphs response).

In turn, the FCRA defines a "consumer report" to include:

> [A]ny communication of <u>any information</u> by a consumer reporting agency <u>bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living</u> which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for - -

9

>   (A)   credit or insurance to be used primarily for personal family, or household purposes;
>   (B)   employment purposes; or
>   (C)   any other purpose authorized under section 604

15 U.S.C. § 1681a(d)(1)(A) (emphasis added).

There is no doubt that government information from public records that is sold within credit reports and that may be used for credit-eligibility, employment, rental and other business decisions is covered under the FCRA. *See Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d. Cir. 1996) (involving alleged government tax lien reported on Trans Union report); *Lawrence v. Trans Union, LLC*, 296 F. Supp.2d 582, Civ. No. 0204440, 2003 WL 22992081 (E.D. Pa. Dec. 11, 2003) (Trans Union can be held liable under FCRA for court *judgment information* on its consumer reports obtained from third party vendor); *Soghomonian v. Unites States, et al.*, 278 F. Supp.2d 1151 (E.D. Cal. 2003) (Trans Union can be held liable under FCRA for government *tax lien* information on its consumer reports).

Moreover, both federal courts and the FTC have held that companies that sell criminal background information are covered by the FCRA. *See Lewis v. Ohio Professional Electronic Network LLC*, 190 F. Supp.2d 1049 (S.D. Ohio 2002) (corporation that sold criminal background reports was a "credit reporting agency" and thus subject to the FCRA); Sum FTC Staff Opinion 9-15-99 (law firm that researches criminal records of job applicants for its clients is covered by the FCRA as a consumer reporting agency selling consumer repots); Leathers FTC Staff Opinion 9-9-98 (company that provides background information to fast food employers over telephone regarding prospective employees is covered by the FCRA as a consumer reporting agency selling consumer repots); LeBlanc FTC Staff Opinion 6-9-98 (company that gathers criminal records for

third parties is by the FCRA as a consumer reporting agency selling consumer repots). (FTC Staff Opinion letters are available, *inter alia*, at http://www.ftc.gov/os/statutes/fcra/index.shtm).[4]

Even more specifically, the U.S. Treasury Department issued regulation specifically regarding OFAC listing on credit reports. *See* Foreign Asset Control Regulations of the Credit Reporting Industry. *See* http://www.treas.gov/offices/enforcement/ofac/regulations/t11faccr.pdf. (4-13-04). According to those regulations, a company like Trans Union is not required to sell the OFAC list. If its chooses to do so, however, the it must, at a minimum: (1) accept consumer disputes and remove inaccurate information from the consumer's report; (2) explain to recipients of credit reports with OFAC Alerts on them that the individual's information is similar to the information on the OFAC list, but should not state that the information "matches" or that the applicant is in fact the individual on the OFAC list unless the consumer reporting agency verified that the person is on the list; and (3) direct the recipients of credit reports with OFAC Alerts on them to the Website of the U.S. Department of the Treasury's Office of Foreign Asset Control. (*Id.*).

The OFAC list sold by Trans Union to third parties in this case is just another version of a criminal background check or a check of government or public record information concerning a consumer. When presented on a credit report, the OFAC listing is no different from another government public record, such as a tax lien, judgment or record of conviction or arrest. *See* 15 U.S.C. § 1681c(a)(1) – (5) (regarding how long public record and criminal background information can remain on a credit report). The U.S. Department of the Treasury's regulations recognize this fact, which is already embedded in the statute, case law, and related FTC

---

[4] Plaintiff is not aware of any published decisions specifically involving the OFAC list of known terrorists, money launderers and drug traffickers.

commentary. Thus, businesses such as Trans Union which regularly sell this information to third parties must comply with the FCRA's duties for consumer reporting agencies.

Indeed, Trans Union recognizes these duties in the contest of tax lines, judgment or bankruptcies. It argues, however, that the U.S. Department of the Treasury's OFAC list is a different type of public or government record and should not be covered by the FCRA – but it offers no legal authority whatsoever is support of that contention. It offers no such authority, Plaintiff submits, because none is in Trans Union's favor.

Further, Trans Union's factual contention that the OFAC list is unrelated to credit eligibility is belied by its own admissions. Indeed, Trans Union advises its potential customers and subscribers that they must insure that they "are not extending credit or financial services" to consumers on the OFAC list. (P-33) (TU OFAC Name Screen marketing material). On its Website, Trans Union advises as follows:

> TransUnion OFAC Advisor is a screening solution that provides <u>credit grantors</u> with a simple, automatic method for use in complying with new federal regulations as set forth in the USA PATRIOT Act.
>
> Signed into law last year, the USA PATRIOT Act will hold credit grantors to new standards of identity verification <u>to ensure credit and financial services are not extended to known terrorists, drug traffickers or money launderers.</u>
> . . . .
>
> "With TransUnion OFAC Advisor, our subscribers can now have prospect and customer information automatically checked against the OFAC list <u>every time they pull a credit report or selected TransUnion products</u>" . . . .

http://newsroom.transunion.com/index.php?s=press_releases&item=311 (emphasis added).

Moreover, according to the U.S. Department of the Treasury's Regulations of the Credit Reporting Industry, when any person is on the OFAC list, that person is simply ineligible to

12

conduct any business in the U.S., and extending credit to such a person can result in severe criminal and civil penalties. *See* Foreign Asset Control Regulations of the Credit Reporting Industry (4-13-04), http://www.treas.gov/offices/enforcement/ofac/regulations/t11faccr.pdf. Indeed, credit-eligibility is precisely the reason why businesses buy Trans Union credit reports with OFAC Alerts on them.

The notion that the OFAC list is not used for credit-eligibility determination is also belied by the testimony of both Plaintiff and Elway Subaru's Tyler Sullivan in this case, both of whom testified that Plaintiff was not going to be able to obtain a loan or a car if, in fact, she was on the OFAC list, as well as the testimony of Trans Union's own witnesses.

In sum, Trans Union is a consumer reporting agency and the "OFAC Alert" reports are consumer reports precisely because they bear upon a "consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living . . . ." 15 U.S.C. § 1681a(d)(1)(A). Trans Union's last-minute attempt to argue that the FCRA does not even apply in this context to this case is legally unsupported and factually misleading.

## IV. CONCLUSION

For the reasons stated above, this Court should permit Plaintiff to present evidence and recover damages from October 27, 2003 through the present, as discussed above, and into the future as the jury deems appropriate.

Respectfully submitted,

FRANCIS & MAILMAN, P.C.

BY: _____
JOHN SOUMILAS, ESQUIRE
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Dated: April 17, 2007

# EXHIBIT A

1  John Elway Subaru held up her application for a loan
2  which, in fact, is untrue.
3       Chase granted it immediately, he would have
4  known if he had looked at the declaration and at the
5  papers.
6       THE COURT:  Well, it depends on your
7  definition of immediate.  Let me make the following
8  ruling.
9       Certainly for Daubert purposes he qualifies
10 as an expert limited to what he knows about and what he
11 says he knows about.
12      The scope of his testimony will be reined in
13 at trial to the extent that it's necessary to do so,
14 and I will rule on each question and any objections as
15 they come along at the course of the trial.  He
16 certainly knows enough to testify to some extent in
17 this case.
18      My definition of a permissible expert is
19 somebody who knows more about it than I do, and he
20 certainly does that.
21      While we're here my inclination so far,
22 unless between now and trial somebody can talk me out
23 of it, is that there is no liability for the initial
24 reporting, and that the plaintiff probably didn't
25 suffer much in the way of damages.

49

In other words, this defendant is not subject to liability because the report originally included this OFAC listing.

But, there can be liability, and it seems to me that there probably is, with respect to their failure to correct their records and eliminate that entry once the error was brought to their attention.

So, if it's of any consolation in considering whether the case should settle or not, I would suggest that you devote yourselves to the failure to remove the offending entries. Okay, I will see you at trial.

MR. LUCKMAN: Sir?

THE COURT: Yes?

MR. LUCKMAN: Who should we see about the trial date?

THE COURT: Well, when do you want to have trial?

MR. LUCKMAN: John and I had a conversation about that, and if it was to be this -- because we have a couple trials coming up and personal matters and business trips, we picked a couple dates in I think November and one bad one in early December. It would be bad for me personally.

If it were to be a little later we would get back to the Court with your available dates. If it

1  could be after January 1, we could get back to you with
2  the dates.
3          THE COURT:  Any problem with that?
4          MR. SOUMILAS:  Your Honor, I have no problem
5  with that.  We talked about it I believe the end of
6  November, on the 29th of November.
7          THE COURT:  Okay.  Discuss it among
8  yourselves and get back to my courtroom deputy.  We
9  will set it up for you --
10         MR. LUCKMAN:  Okay.
11         THE COURT:  -- after the first of the year,
12 okay?
13         MR. LUCKMAN:  Okay.
14         MR. SOUMILAS:  Your Honor, I probably would
15 want the opportunity before trial to try to convince
16 Your Honor as to the initial reporting, because there
17 is case law in this circuit.
18         THE COURT:  You will have that opportunity.
19         MR. SOUMILAS:  I've had it, you say, Your
20 Honor?
21         THE COURT:  You will have that opportunity.
22         MR. SOUMILAS:  Thank you, Your Honor.
23         THE COURT:  Sure.
24         MR. LUCKMAN:  I can't object to that.
25         THE COURT:  You can object when he files

51

1  it.

2       MR. LUCKMAN:  Yes, sir.

3       MR. SOUMILAS:  We will have it now or later,

4  Your Honor.

5       THE COURT:  Give it to him now before you

6  leave if you want.

7       MR. SOUMILAS:  Okay.

8       THE COURT:  Okay.  We'll see you all later.

9       MR. SOUMILAS:  Thank you, Your Honor.

10       (Proceedings adjourned, 2:34 p.m.)

11                  * * *

## CERTIFICATE OF SERVICE

I, John Soumilas, hereby certify that, on this date, I caused a true and correct copy of Plaintiff's Trial Brief to be served by way of ECF notification, upon the following individuals:

Bruce S. Luckman, Esquire
Timothy P. Creech, Esquire
Kogan, Trichon & Wertheimer, P.C.
1818 Market Street, 30th Floor
Philadelphia, PA 19103

FRANCIS & MAILMAN, P.C.

BY: _____
JOHN SOUMILAS, ESQUIRE
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

DATED: April 17, 2007            Attorneys for Plaintiff