```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

SANDRA CORTEZ                  :     CIVIL ACTION
                               :
           v.                  :
                               :
TRANS UNION, LLC               :     NO. 05-cv-05684-JF

MEMORANDUM AND ORDER

Fullam, Sr. J.                                   September 13, 2007

The Office of Foreign Assets Control, within the United States Treasury Department, maintains a Specially Designated Nationals ("SDN") list of drug traffickers and terrorists. American businesses are required by the Patriot Act to take reasonable measures to ensure that they are not doing business with, or extending credit to, anyone on the SDN list.

The defendant, Trans Union, LLC, a credit-reporting agency, provides credit reports for a fee and, for an additional fee, notifies its clients as to whether the person whose credit is being investigated is named on the "SDN" list promulgated by OFAC.

Plaintiff, Sandra Cortez, a 60-odd-year-old resident of Colorado, sought to buy a new automobile from the John Elway Dealership in Colorado, and applied for financing at that dealership. The auto dealer obtained a credit report from the defendant, Trans Union, which included in its credit report an "OFAC alert" which stated "INPUT NAME MATCHES NAME ON THE OFAC DATABASE." Actually, the name on the SDN list was "Sandra Cortes

Quintero," listed as residing in Cali, Columbia, and some 30 or 40 years younger than plaintiff.  As a result of the misinformation supplied in the credit report, plaintiff's acquisition of the motor vehicle was delayed for several hours, and she allegedly suffered embarrassment and emotional distress.  Plaintiff sought to have the erroneous information removed from her credit report but the defendant did not take any corrective action until at least 18 months later.

Plaintiff brought this action, asserting violations of the Fair Credit Reporting Act ("FCRA").  A jury awarded her compensatory damages in the sum of $50,000 and punitive damages in the sum of $750,000.  The defendant has filed motions for judgment as a matter of law, or a new trial, or remittitur.

Before trial, defendant sought a ruling to the effect that the information the defendant provided to the auto agency did not constitute a credit report or credit information within the meaning of the Fair Credit Reporting Act.  I rejected that argument at trial, and adhere to that ruling now.  The information "INPUT NAME MATCHES NAME ON THE OFAC DATABASE" appeared on a document headed "Credit Report."  The FCRA defines "consumer report" as:

> "Any written, oral or other communication of
> any information by a consumer reporting
> agency bearing on a consumer's
> creditworthiness, credit standing, credit
> capacity, character, general reputation,
> personal characteristics, or mode of living

>               which is used or expected to be used or
>               collected in whole or in part for the purpose
>               of serving as a factor in establishing the
>               consumer's eligibility for (A) credit or
>               insurance ..."

15 U.S.C. § 1681(a)(d).  In my view, there is no possible basis for concluding that the report issued by the defendant was not covered by the FCRA.

It may well be that the defendant could have escaped liability if it merely reported that the plaintiff's name was (arguably) similar to a name on the OFAC list, but it seems obvious that plaintiff's name did not "match" a name on the list.

It is true that the defendant did not itself screen the OFAC list, but contracted with another firm to do that chore. But in the course of obtaining the results of the purported screening, defendant merely furnished the other firm with plaintiff's name, and furnished no information as to her residence, address or date of birth.

The jury properly found that, in furnishing the erroneous information to the auto dealership, the defendant had acted only negligently, not willfully.  Thus, for the initial violation, the defendant would have been liable only for economic losses or statutory damages.  But the jury also found that, after the original error, the defendant committed three willful violations, in connection with its responses or lack of responses to plaintiff's complaints about the error.  On March 31, 2005,

the day after her experience at the auto dealership, plaintiff telephoned defendant's customer service department about the error, but was informed that no information about the OFAC product was included in her report.  Plaintiff then sent a facsimile copy of the credit report furnished to the Elway Dealership, but received no response.  She sent a second letter on April 6, 2005, to which defendant responded on April 18 "We were unable to determine the nature of your request."  Plaintiff wrote a third letter on April 24, to which defendant responded on May 10 by again stating that there was no "alert" on plaintiff's report.

     Defendant's customer service manager testified at trial that it was defendant's policy not to investigate OFAC disputes.  Through the auto dealership in question, plaintiff again obtained a credit report on June 3, 2005; the OFAC alert was still on her report.  In attempting to lease an apartment in June 2006, plaintiff found it necessary to again explain that, although her credit report included an OFAC alert, she was not the same person named on the SDN list.  (She succeeded in leasing the apartment.)  Finally, late in 2006, the defendant advised plaintiff's counsel that the disputed information had been "blocked" from appearing on future credit reports.

     I have no difficulty in concluding that defendant's motion for judgment as a matter of law should be denied, and that

there is no basis for granting a new trial, except with respect to the alleged excessiveness of the jury's verdict. On that subject, I conclude that the jury's compensatory damage award of $50,000 was exceedingly generous, but not so excessive as to warrant judicial interference. With respect to punitive damages, however, I conclude that the jury's award of $750,000 exceeded permissible limits. The jury undoubtedly became incensed at the defendant's seeming insensitivity to the harm it was causing plaintiff, and its reluctance to take corrective measures. The jury may also have been unduly influenced by the defendant's balance sheet, which reflected a net worth of close to a billion dollars.

On balance, I conclude that an award of punitive damages would exceed the maximum permissible limit if it were to exceed double the amount of the compensatory award. In short, I conclude that a compensatory award of $50,000 and a punitive award of $100,000 constitute the maximum which this record would support. Accordingly, the defendant's motion for a new trial will be granted unless, within 30 days, plaintiff's accepts a reduction in the award to a total of $150,000. An Order to that effect follows.

Plaintiff has filed an application for counsel fees in the sum of $179,734, plus costs in the sum of $20,209.76, together with post-judgment interest. These amounts, too, seem

excessive.  For example, it is alleged that plaintiff's counsel spent 32.4 hours in drafting proposed jury instructions, and 53.8 hours for the pending fee application.  In addition, there is a claim for 29.2 hours devoted to various state-law claims, all of which were withdrawn before trial.

The hourly rates claimed are in excess of the current Philadelphia CLS Schedule.  Plaintiff claims more than $7,000 for expert witness fees, whereas the expert's testimony was of little or no consequence and there is no basis for reimbursement in excess of the standard per diem witness fee; and the alleged expenses for travel and lodging are undocumented.

I note, further, that most of counsel's written work-product was unduly lengthy, and characterized by repeated <u>ad hominem</u> attacks on the defendant and defense counsel.  All in all, I conclude that an award of $125,000 in counsel fees and $7,000 in costs would be appropriate.  An Order follows.

```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

SANDRA CORTEZ                   :       CIVIL ACTION
                                :
         v.                     :
                                :
TRANS UNION, LLC                :       NO. 05-cv-05684-JF

ORDER

AND NOW, this 13th day of September 2007, IT IS ORDERED:

1.  Defendant's motion for judgment as a matter of law is DENIED.

2.  Defendant's motion for a new trial as to liability is DENIED.

3.  Defendant's motion for a new trial is GRANTED with respect to damages, unless, within 30 days, plaintiff accepts a remittitur, limiting the award to $50,000 compensatory damages and $100,000 punitive damages, for a total award of $150,000.

4.  Plaintiff's motion for an award of counsel fees and expenses is GRANTED in part.  Plaintiff is awarded $125,000 in counsel fees plus $7,000 in expenses, on condition that plaintiff accepts the remittitur herein ordered.  If the remittitur is not accepted, final action on plaintiff's application for counsel fees and expenses will be deferred pending final outcome of this litigation.

                                BY THE COURT:


                                /s/ John P. Fullam
                                John P. Fullam, Sr. J.